IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERRY L. NORMORE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 3:18-CV-02506-E |
| DALLAS INDEPENDENT SCHOOL | § | |
| DISTRICT; and DWAIN SIMMONS, in His | § | |
| Official Capacity, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are:  Defendant Dwain Simmons's Motion for Summary Judgment (Doc. 97); Plaintiff Terry L. Normore's Motion to Strike Simmons's Summary Judgment Evidence (Doc. 115); Normore's Motion for Partial Summary Judgment (Doc. 125); and Simmons's Objections and Motion to Strike Normore's Summary Judgment Evidence (Doc. 135).  Having carefully considered the motions, the parties' briefing and appendices, and the applicable law, for reasons that follow, the Court grants Simmons's motion for summary judgment and finds the other three motions moot.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Normore filed this action against the Dallas Independent School District (DISD) and Simmons, in his official capacity as principal of L.G. Pinkston High School.  The following factual background is taken from Normore's amended complaint, which states that Normore is 57 years old.  In 2007, DISD hired Normore as a teacher at Pinkston and she later became the school's Assistant Athletic Director (AAD) and coached the girls' basketball and track teams.  Her lawsuit arises out of two adverse employment actions—removal from her position as AAD and later

termination of her employment.  Normore alleges that Simmons took these actions using policies and procedures that had not been previously enforced against other employees.

Normore frequently discussed with Simmons's predecessor disparities between (1) the educational resources at Pinkston compared to other DISD schools; (2) the athletic programs at Pinkston for female athletes compared to male athletes; and (3) the athletic program at Pinkston and other economically-disadvantaged schools compared to other DISD schools.  Normore, along with staff at other schools, reported these disparate conditions to DISD over several school years, but DISD failed to respond.

Eventually, DISD hired Defendant Simmons as principal of Pinkston.  Normore continued to raise issues related to the disparate conditions to Simmons.  With Simmons as principal, Pinkston underwent "revolutionary changes."  One such change derived from DISD changing its reduction in force (RIF) policy, which allowed the Superintendent or designated principals to place school employees on a list, "the excess list," and ultimately terminate their employment.  The criteria for placing an employee on the excess list directly targeted female and older staff members.  Normore alleges Simmons used DISD's discriminatory policies to radically change staff at Pinkston to his benefit, harming the staff and students.

In 2014, Normore emailed DISD's Athletic Director twice, copying Simmons and Derwin Dukes, Pinkston's Athletic Coordinator and Head Football Coach.  The emails were about potential Title IX violations due to the disparate conditions. After this, Simmons began to treat Normore differently than other teachers and coaches who were male or younger.   Simmons and Normore clashed on various issues.  For example, Simmons attempted to pressure Normore to replace the assistant girls' basketball coach with someone younger.  He also gave Normore

permission to miss a professional development meeting, but later yelled at her for not knowing what was discussed at the meeting.

In the spring of 2016, Dukes and another administrative official orally gave Normore permission to turn an empty classroom into a workout facility for female athletes to use during the 2016-2017 school year.  As a result, Normore did not file a request for approval from Simmons. In May, Dukes gave Normore permission to paint the new workout room and said he would inform Simmons.  On June 22, 2016, Normore and some of her student athletes painted the workout room. The next morning, Simmons emailed Normore about the paint job, stating it was "completely unauthorized."  Normore was directed to stop painting, and  Simmons indicated disciplinary actions would follow.  Two days later, Simmons informed Normore he was removing her from her position as AAD.  Simmons replaced Normore with a younger female.

On July 29, 2016, Normore filed a grievance against Simmons with DISD's Human Capital Management Department.  She alleged Simmons violated Title IX and local policies; she asked for her AAD position back.  Normore later amended the grievance to add additional facts and ask for a second weight room for female athletes.  On September 22, 2016, DISD held a Level II Grievance hearing at which Normore presented evidence related to the discrimination and retaliation against her and to Title IX violations.  DISD issued a decision letter on September 26, 2016, denying all relief requested by Normore.  Among other things, DISD claimed the Pinkston handbook forbids painting campus facilities.  Normore alleges this policy was contained in the handbook for the 2016-2017 school year and the prior version had been destroyed to conceal the fact that Simmons had no justification for removing Normore from as AAD.

3

DISD began an investigation into potential violations of Title IX and Title VII as alleged by Normore.  It ultimately denied or terminated the Title IX and Title VII grievance against Simmons.

On December 21, 2016, Normore filed a complaint with the United States Department of Education in the Office of the Civil Rights Division (OCR) in which she alleged violations of Title IX against DISD.  The OCR referred employment issues in the complaint to the Equal Employment Opportunity Commission (EEOC) and dismissed the Title IX violations.  In April 2017, Normore filed an Intake Questionnaire with the EEOC against DISD and Pinkston.

On May 18, 2017, an athletic banquet was held for Pinkston athletes and their families at a bowling alley.  Following an awards presentation for the athletes, most remained at the bowling alley to bowl.  Normore slipped and fell while bowling.  She and others laughed it off.  Dukes approached Normore and hit her on the shoulder while making a joke about Normore's fall.  The complaint alleges, "As coaches, this type of behavior is routine."  Normore "inoffensively smacked" Dukes in return and made a self-deprecating joke about her bowling skills.  Dukes did not indicate the "smack" hurt him or request first aid.  None of the other coaches or families "really noticed this innocuous encounter" and everyone continued to bowl.  Dukes later thanked Normore for organizing the event.

A few days later, on May 23, Normore intervened in an incident where Dukes was berating a female student.  Dukes alleged she threatened him.  That same day, Dukes emailed Simmons and an assistant principal to tell them about the threat and also inform them that Normore had punched him the chest at the bowling alley.  Dukes said the punch was so hard his chest was in pain.  Simmons began an investigation.  Normore was placed on administrative leave.  The stated basis for the leave was that she had allegedly punched Dukes on May 18 and threatened him on May 23.

In October 2017, Simmons recommended that Normore's employment be terminated.  He issued an Administrator's Investigation report in which he made several allegedly unsubstantiated factual findings and grossly unreasonable conclusions.  Based on the report, DISD recommended Normore's termination.  Normore appealed to the Texas Education Agency (TEA).  The Independent Hearing Examiner concluded that Normore punched Dukes in violation of DISD policy but also concluded that Normore did not threaten Dukes on May 23.  The hearing examiner recommended that DISD terminate Normore's employment.  DISD terminated Normore's employment on March 1, 2018.  On June 15, 2018, Normore filed a charge with the EEOC for discrimination and retaliation based on her sex and age.  The EEOC later issued a right to sue letter.

In addition to claims against DISD (which are the subject of a separate motion for summary judgment), Normore asserts claims against Simmons in his individual capacity under 42 U.S.C. § 1983 for violations of her federal constitutional rights.  First, she alleges he violated her First Amendment right to free speech.  Normore alleges she engaged in protected activities by "making and filing her Complaints with DISD, the OCR, and the EEOC, discussing with members of the public" Pinkston's failure to provide females with substantially similar athletic facilities and the illegal use of RIF policies to effectuate discriminatory and retaliatory conduct, among other things.  Normore alleges Simmons was motivated by Normore's speech on these issues to remove her as AAD and ultimately terminate her employment.

Normore further alleges that Simmons violated her Fourteenth Amendment rights to equal protection and due process.  Normore claims Simmons denied her equal protection of the law based on her sex and age.  She contends that as a female and an "older person" she is a member of a protected class under the Equal Protection Clause.   In addition, Normore alleges Simmons's

actions violated her due process rights to be "free from disclosure of personal information, egregious official misconduct, appreciable physical and mental pain, and the deprivation of a vested interest in employment and pursuing an occupation."  Normore alleges Simmons violated internal policies when he took action against her for inadvertently violating a painting policy that had not been previously enforced against other teachers.  Normore claims Simmons did not punish other male and younger employees for similar conduct and that his removing her from her position as AAD was disproportionate and excessive.   Regarding her termination, Normore alleges Simmons maliciously used his supervisory role to prejudicially investigate and handle Dukes's complaint about the bowling alley incident, relied on sex and age-based stereotypes to unfairly recommend her termination, relied on the RIF policies to remove her based on her protected class, recommended disciplinary measures which were grossly unreasonable, and terminated her employment when other males and younger employees had not been terminated.

Simmons contends he is entitled to summary judgment for several reasons.  He asserts:  (1) Normore's claims related to the removal of her position as AAD are time barred; (2) collateral estoppel bars relitigation of facts adjudicated in Normore's TEA appeal; and (3) as a matter of law, for various reasons including qualified immunity, Normore has no viable due process claim, free speech claim, or equal protection claim.

## LEGAL STANDARDS

Section 1983 provides a cause of action for individuals who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a "person" acting under color of state law.  42 U.S.C. § 1983; *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  For relief under § 1983, a plaintiff must establish: (1) a constitutional violation; and (2)

the defendants were acting under color of state law when they committed the constitutional violation.  *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "A fact is material if it might affect the outcome of the suit," and "[a] factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted)).

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 57 U.S. 7, 11 (2015) (per curiam)).  "[A] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (citation omitted).  Although the court draws all factual inferences in favor of the plaintiff, the plaintiff "must point out a genuine dispute of material fact as to whether [the defendant's] allegedly wrongful conduct violated clearly established law." *Id.* (citation omitted).

To determine whether a defendant is entitled to qualified immunity at the summary judgment stage, courts "engage in a two-pronged inquiry.  The first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a federal right.'" *Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021) (quoting *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014)).  Next, the court considers whether the defendant's

conduct was objectively unreasonable in light of clearly established law at the time of the incident. *Walsh v. Hodge*, 975 F.3d 475, 481 (5th Cir. 2020).  The court may decide the order in which it applies these inquiries.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

**ANALYSIS**

*Timeliness of Normore's Claims Related to her Removal as AAD*

Simmons first contends that Normore's claims concerning her removal from her supplemental position as AAD are time barred because she did not bring them within the two-year statute of limitations.  She filed this suit on September 21, 2018.  Simmons argues Normore was removed from the AAD position more than two years prior, on June 24, 2016.  Simmons verbally notified Normore on that date that she would no longer be the AAD.  Even if verbal notice was somehow insufficient to trigger the timeline for filing suit, Simmons argues, on July 19, 2016, he emailed Normore to notify her that she would no longer serve as AAD, as discussed in their June phone call.

In employment cases, limitations periods normally commence when the employer's decision is made.  *Delaware State Coll. v. Ricks*, 449 U.S. 250, 506 (1980).  Normore agrees that a two-year statute of limitations applies to her § 1983 claims.  She does not dispute that she learned she would be removed as AAD more than two years before she filed suit.  In her response, Normore argues, however, that her claims involving removal as AAD did not accrue until September 22, 2016, the day of the grievance hearing.  She alleges for the first time that Simmons intentionally falsified the 2015 Handbook.  She contends she learned of the falsification and also that her speech motivated Simmons to remove her as AAD at the grievance hearing.

The Fifth Circuit has rejected the argument Normore makes.  *See Merrill v. S. Meth. Univ.*, 806 F.2d 600, 605 (5th Cir. 1986).  In *Merrill*, the issue was whether the plaintiff timely filed Title

8

VII employment discrimination claims.  The Fifth Circuit recognized that the limitations period begins running on the date the plaintiff knows or reasonably should know that the discriminatory act has occurred.  *Id.*  The plaintiff argued the court should focus on the date she first learned that a discriminatory motive caused the act, instead of the actual date of the act itself.  *Id.* at 605.  The Fifth Circuit rejected the plaintiff's proposal, noting "it might be years before a person apprehends that unpleasant events in the past were caused by illegal discrimination."  *Id.*

To the extent Normore argues her claims accrued on September 26, 2016, the date she was denied reinstatement as AAD, this argument is also without merit.  Normore was notified of her removal as AAD in the summer of 2016.  The later denial of her grievance by which she sought to be reinstated was merely an effect of the prior employment decision and not the date on which her claims accrued.  *See Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 456–57 (5th Cir. 2011).  Normore's claims based on her removal as AAD are outside the two-year limitations period.

Normore offers several other reasons why these claims are still timely.  First, she argues the limitations period should be equitably tolled for the "Administrative Exhaustion Period."  Normore contends the limitations period should be tolled until the date when her claims accrued under the Texas Commission on Human Rights Act (TCHRA).  According to Normore, the limitations period should be tolled for the time between her administrative filing with the OCR in December 2016 and its March 2017 decision to allow her to refile her allegations within 60 days of DISD's completion of its investigation into her grievance.  Next, she argues equitable estoppel suspends limitations during any period in which the defendant took active steps to prevent the plaintiff from suing.  Normore argues Defendants took active steps to delay her termination decision by 24 weeks and Simmons should be equitably estopped from counting those weeks towards the limitations period.  In addition, Normore argues her claims are timely under the

continuing violation doctrine.  She asserts the removal of her AAD position is an act related to her termination and part of a persistent pattern of attempts to affect her pay.  She argues her injury continued to accrue for as long as her reinstatement was denied.  Finally, Normore argues fraudulent concealment.  She contends she did not know all the relevant facts until September 22, 2016 when she learned Simmons removed her as AAD based on a policy that he allegedly made up.  Normore argues there is undisputed evidence that Simmons drafted and modified the Pinkston 2015 handbook after Normore painted the female weight room.

None of Normore's arguments are valid.  In support of her equitable tolling argument, Normore relies on § 21.256 of the TCHRA which gives a plaintiff bringing an action under "this subchapter" two years from the anniversary of the date of the complaint relating to the action to file suit.  *See* TEX. LABOR CODE ANN. § 21.256.  The "complaint" referenced in the TCHRA is one filed with the Texas Workforce Commission or the EEOC.  Normore relies upon her OCR complaint filed with the Department of Education.  Normore's second argument, about equitable estoppel, involves allegations about Defendants' delay in 2017 in *terminating* Normore's employment.  It is unclear why or how these allegations extend the limitations period for claims related to loss of her AAD position.  As such, Normore has not met her burden to establish equitable estoppel in avoidance of Simmons's limitations defense.  *See Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 593 (Tex. 2017).  Also, claims alleging discrete acts of employment discrimination, such as the removal of Normore's AAD position, are not subject to the continuing violation doctrine.  *Heath v. Board of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737-740 (5th Cir. 2017) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).  Finally, the Court rejects Normore's fraudulent concealment argument for the same reasons it rejected her argument that her claims accrued in September 2016.  Normore learned she

10

was losing her AAD position in June 2016.  In July, she filed a grievance against Simmons based on her removal as AAD.  To allow plaintiffs to raise employment discrimination claims whenever they begin to suspect their employers had illicit motives would effectively eviscerate the time limits prescribed for filing such complaint.  *Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992); *see Li v. Univ. of Tex. Rio Grande Valley*, No. 7:15-CV-00534, 2018 WL 706472, at \*5 (S.D. Tex. Feb. 2, 2018).  The Court concludes that Simmons is entitled to summary judgment on Normore's § 1983 claims that arise out of the removal of her position as AAD.

*Due Process Claims*

Next, the Court addresses Simmons's contention that he is entitled to summary judgment on Normore's due process claims.  To state a Fourteenth Amendment due process claim under § 1983, a plaintiff must first identify a protected life, liberty, or property interest and then prove that governmental action resulted in a deprivation of that interest.  *Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 242 (5th Cir. 2018).  To enjoy a property interest in employment, an employee must have a legitimate claim of entitlement created and defined by existing rules or understandings that stem from an independent source such as state law.  *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).  Simmons does not dispute that Normore had a property interest in her continued employment.  He argues Normore cannot overcome the qualified immunity defense.  Specifically, he contends Normore cannot show that his recommendation that she be fired after she punched a colleague in the chest at a school-sponsored event was objectively unreasonable.  He also argues that Normore received notice and a hearing regarding her termination.  Simmons asserts Normore thus received all the process she was due through Chapter 21 of the Texas Education Code.

The only due process claims Normore addresses in her response to the motion for summary judgment are those claims involving the loss of her AAD position after she painted a classroom.

Her arguments involve the alleged fabrication of the school handbook to include a painting policy. Normore has the burden to overcome Simmons's assertion of qualified immunity. By failing to respond to Simmons's arguments about her due process claims arising from termination of her employment, Normore has waived or abandoned those claims and failed to meet her summary judgment burden. *See Holmes v. N. Tex. Health Care Laundry Coop. Ass'n*, 304 F. Supp. 3d 525, 540–41 (N.D. Tex. 2018) (citing *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) ("an issue raised in the complaint but ignored at summary judgment may be deemed waived")). Accordingly, Simmons is entitled to summary judgment on Normore's § 1983 due process claims based on the termination of her employment.

*First Amendment Claims*

Next, the Court addresses Simmons's assertion that he is entitled to summary judgment on Normore's claims that her employment was terminated because she spoke out on matters of public concern, such as Pinkston's failure to provide females with substantially similar athletic opportunities. A First Amendment retaliation claim in the employment context has four elements: (1) the plaintiff suffered an adverse employment decision; (2) the plaintiff's speech involved a matter of public concern; (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct. *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004).

Simmons asserts he is entitled to qualified immunity with respect to Normore's First Amendment retaliation claims because, although he recommended termination of Normore's employment, he was not the final decisionmaker. He relies on the Fifth Circuit's opinion in *Sims v. City of Madisonville*, 894 F.3d 632 (5th Cir. 2018). *Sims* recognized there had been uncertainty on the issue of whether someone who is not a final decisionmaker can be liable for § 1983 First

Amendment retaliation. *Id.* at 641. It clarified that *Jett v. Dallas Independent School District*, 798 F.2d 748 (5th Cir. 1986), is controlling precedent. Under *Jett*, a plaintiff need only show an affirmative causal link between the individual's conduct and the decisionmaker's decision. Thus, the law in this area was unsettled until the date of the *Sims*'s opinion, June 28, 2018. Simmons asserts that because the law was unsettled at the time of his actions in this suit, he is entitled to qualified immunity.

Normore seeks to distinguish *Sims* because it involved a police officer instead of a school official. But the Fifth Circuit has applied *Sims* in the school employment context. *See Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 306–07 (5th Cir. 2020) (concluding that school district superintendent was entitled to qualified immunity as to former employees' First Amendment retaliation claims because law remained unsettled until *Sims*). The Court concludes that Simmons is entitled to qualified immunity as to Normore's First Amendment retaliation claims.

*Equal Protection Claims*

Simmons also asserts he is entitled to summary judgment on Normore's equal protection claims. Normore alleges Simmons recommended termination of her employment based on her sex and her age. To establish a violation of the Equal Protection Clause in the employment context, a plaintiff must prove a discriminatory purpose or motive. *Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018). In the absence of direct evidence of intentional discrimination, the Court applies the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Normore must establish that she (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or in the case of disparate treatment, show

13

that other similarly situated employees were treated more favorably. *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).

Simmons correctly contends the Age Discrimination in Employment Act (ADEA) preempts Normore's age-based equal protection claim. The Fifth Circuit has held that the ADEA is the sole remedy for people who have been discriminated against in the workplace due to their age. *Lafleur v. Tex. Dep't of Health*, 126 F.3d 758, 760 (5th Cir. 1997). In her response to Simmons's motion for summary judgment, Normore does not contend otherwise. She does, however, argue for the first time intersectional discrimination (age plus sex), i.e., that Simmons discriminated against her because she was an older woman. The language Normore primarily relies on is from a case that predates *Lafleur. See Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980). As another district court stated, "Coupling age with sex [and terming it 'intersectional'] does not provide Plaintiff with a cognizable claim. Allowing Plaintiff to proceed would implicitly validate the pursuit of an age discrimination action under Section 1983 pursuant to the Equal Protection clause." *Morrison v. City of Bainbridge, Ga.*, No. 1:07-CV-139 (WLS), 2009 WL 10676818, at *3 (M.D. Ga. Sept. 4, 2009). Even if Normore's complaint could be read to allege a claim for intersectional discrimination, Simmons is entitled to summary judgment on such a claim because it is age-based.

The Court turns to Normore's claims that Simmons recommended her employment be terminated based on her sex. Simmons argues Normore cannot make a prima facie case because she has no evidence that similarly situated employees were treated more favorably.

In her summary judgment response, Normore provides five examples of similarly situated employees being treated more favorably: 1) at the bowling alley, Dukes touched Normore in the same manner in which she touched him, yet Simmons did not investigate Dukes or ask him for a

14

statement; (2) Dukes yelled at a student, and Simmons took no action; (3) another male teacher punched a student in the face and was placed on administrative leave, rather than fired; (4) "[a]nother male" pushed and choked a student, and Simmons only issued a letter of concern; and (5) "[a]nother male" caused a student's hand to swell, and Simmons only issued a letter of reprimand.   Normore argues Simmons's "pattern and practice of discriminating against females by recommending and taking more severe actions against women than men" shows his discriminatory intent.

To show disparate treatment, Normore must demonstrate that the misconduct for which she was discharged was nearly identical to that engaged in by an employee not within her protected class who was not recommended for termination. *See Wallace v. Meth. Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001).  This is an exacting standard; "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).  Employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. *Id.* at 259–60. Normore cites instances where Pinkston teachers were disciplined for physical interactions with students at school.  She also cites Simmons's treatment of female students as compared to male students.  These comparisons are too dissimilar to Normore's incident with Dukes, an adult and colleague, at the bowling alley to be considered adequate comparators.

To support her claim about being treated differently from Dukes himself after the bowling alley incident, Normore cites to one page of her summary judgment evidence.  It is a page from a DISD investigator's "Memorandum of Interview" with Dukes.  The interviewer asked Dukes if he touched Normore prior to her hitting him in the chest.  He responded that he "may have touched

15

her on the shoulder and said come on coach let's see what you've got," referring to bowling.  As described in the Memorandum Normore directs the Court to, Dukes's conduct is not similar to Normore's alleged punching of Dukes.  Even if it shows Dukes's conduct was similar to Normore's, this summary judgment evidence does not show how Simmons treated Dukes regarding the incident.  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010).  The Court concludes Normore has not met her burden to establish a prima facie case of intentional discrimination because she has not demonstrated that Simmons treated similarly situated employees more favorably.  Simmons is entitled to summary judgment as to Normore's equal protection claims arising out of the termination of her employment.

### *Other Motions*

In her Motion for Partial Summary Judgment, Normore asserts she is entitled to summary judgment on four defenses asserted by Defendants:  1) collateral estoppel; 2) the *Faragher/Ellerth* defense; 3) the after-acquired evidence defense; and 4) Normore's failure to mitigate damages.  In determining that Simmons is entitled to summary judgment, the Court has not considered any of these defenses.  Thus, the motion is moot as it relates to Simmons.  The Court will consider Normore's motion in conjunction with DISD's summary judgment motion.

In addition, both Normore and Simmons have moved to strike each other's summary judgment evidence.  Normore moved to strike three documents Simmons submitted:  "a document purporting to be the 2015-2016 Faculty & Staff Handbook" for Pinkston, a document entitled "Principal Statements from Conference with Parent Patsy Wills," and a "Memorandum of Interview of P. Will drafted by Jennifer Morin."  Simmons lodges some general objections to

Normore's briefing, and also makes specific objections to certain sections of the declaration of Normore's counsel Christian Cowert and the exhibits referred therein (which Simmons calls "Alleged Metadata Evidence"), Normore's declaration, six declarations from former Pinkston students or parents, and the declarations of Nancy Saddler, Derwin Cantley, and Kenetra Malone. The Court has reviewed this evidence and did not rely on it in ruling on the summary judgment motions. Accordingly, the Court denies as moot Normore's Motion to Strike Simmons's Summary Judgment Evidence and Simmons's Objections and Motion to Strike Normore's Summary Judgment Evidence.

In conclusion, the Court finds that Simmons is entitled to summary judgment as to all of Normore's claims against him.

**SO ORDERED**.

Signed on December 8, 2021.

Ada Brown
UNITED STATES DISTRICT JUDGE